UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT ALMBLAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 13-CV-1297 |
| SCOTSMAN INDUSTRIES, INC. and ) | |
| KEVIN FINK, ) | Judge John W. Darrah |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Robert Almblad ("Almblad"), filed suit against Defendants, Scotsman Industries, Inc. and Kevin Fink (collectively, "Scotsman"), on February 19, 2013, alleging one count of defamation and one count of false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125. Almblad was then granted leave to file a First Amended Complaint, which he did on April 15, 2013; the First Amended Complaint contained the same two counts. On May 9, 2013, Scotsman filed a motion to dismiss both counts which was denied with respect to the defamation count and granted with respect to the Lanham Act violation. However, Almblad was given leave to file a Second Amended Complaint ("SAC"), which he did on September 16, 2013. The SAC still alleges one count of defamation and one count of false advertising. Scotsman has moved to dismiss with regard to the false advertising claim only, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Motion has been fully briefed. For the following reasons, Scotsman's Motion is granted.

BACKGROUND

Scotsman is in the business of manufacturing commercial ice machines. (SAC, Count I ¶ 2.)[1] It is known certain types of commercial ice machines, including some of those manufactured by Scotsman, "accumulate slime, mold and airborne micro-organisms," which can contaminate the ice produced. (*Id*. Count II ¶ 5.) Scotsman sells cleaning agents within an existing market for products able to clear away or prevent such contaminants. (*Id*. ¶¶ 6-7.)

Prior to February 28, 2012, Almblad determined that a design defect in some ice machines – produced by Scotsman and other manufacturers – allowed for the intake of sewer gas. (*Id*. ¶ 2.) After informing the affected companies of his findings, Almblad developed a device that prevented sewer gas intake and made it available for purchase, license, or lease. (*Id*. ¶¶ 2-4.) Ice machine users who availed themselves of Almblad's device would not need to purchase Scotsman's cleaning products. (*Id.* ¶ 8.)

On or about February 28, 2012, Scotsman composed a written, defamatory statement for dissemination to the public, falsely asserting that the design defect Almblad identified did not exist in Scotsman ice machines. (*Id*. Count I ¶ 9.) Later the same day, Scotsman and Almblad participated in a teleconference of representatives of machine manufacturers and buyers and the general public, organized by Michigan-based standards organization, NSF. (*Id*. ¶ 10) The purpose of the teleconference was to discuss whether NSF Standard "NSF/ANSI 12 – Automatic ice making equipment" should be

---

[1] Instead of sequentially numbered paragraphs through both counts of the SAC, each count is comprised of paragraphs numbered 1-11. For this reason, citations are made to the specific count and paragraph number.

revised. (Mem. in Support of Mot. Ex. A at 2.)[2] During the teleconference, Kevin Fink, speaking for Scotsman, verbally disseminated the written defamatory statement. (SAC, Count I ¶ 10.)[3]

Fink expressed that Scotsman was grateful for the opportunity "to address Mr. Almblad's erroneous claims and mischaracterizations that are meant to serve his commercial purposes." (Mem. in Support of Mot. Ex. A at 3.) Allegedly based on testing performed under two scientific advisors, Scotsman concluded Almblad's allegation of sewer gas intake was "just flat wrong. None of our machines do this." (*Id*.) Next, Fink presented Scotsman's findings with regards to airborne contaminants within its ice machines resulting in illness. (*Id*. at 4.) Fink asserted, "Almblad has no scientific or medical evidence . . . describing a single occurrence in which airborne contamination infected an ice machine and caused an illness." (*Id.*) Finally, Fink contended that Scotsman machines are "NSF 12-compliant and NSF 12 is completely consistent with the FDA Food Code," and "Mr. Almblad misinterprets the FDA Food Code to suit his commercial purposes. . . . There is simply no reason to change NSF 12." (*Id*.) Fink acknowledged having seen a video produced by Almblad, showing cocoa powder getting into the machine through the allegedly faulty intake. (*Id*.) After Fink concluded, the ice

---

[2] Although Almblad did not attach the NSF Teleconference Meeting Summary to his Complaint, Scotsman did so to its Motion, and "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (quoting *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006)).

[3] As above, Almblad did not attach the defamatory statement to his Complaint, but Scotsman did so to its Motion.

machine manufacturers present were asked what they believed was happening in the video. (*Id.*) The teleconference concluded without revising NSF 12. (*Id.* at 10.)

Scotsman violated the Lanham Act in connection with Almblad's invention and Scotsman's own goods on and after February 28, 2012, and made false or misleading representations "as exemplified by the false assertions of Scotsman Industries, Inc. recited in paragraph 9 of Count I"[4] of the SAC. (SAC, Count II ¶ 10.)

## LEGAL STANDARD

Scotsman moves to dismiss pursuant to Rule 12(b)(6). When considering Rule 12(b)(6) motions, all well-pleaded allegations within the complaint are taken as true. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). Within a complaint, a proper claim only requires short and plain statements of jurisdiction and entitlement to relief, as well as a demand for the relief sought. Fed. R. Civ. P. 8(a)(1-3). However, the pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The presumption of truth afforded allegations within a complaint is not extended to legal conclusions. *Id*.

A defendant may move to dismiss pursuant to Rule 12(b)(6) for the plaintiff's failure to state a claim upon which relief can be granted. Withstanding such a motion requires alleging enough facts to support a claim that is "plausible on its face." *Id*. (quoting *Twombly* at 570). Facial plausibility exists when the court can "draw the

---

[4] Paragraph 9 of Count I contains the allegation regarding the written statement of February 28, 2012, referred to above.

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court must consider context, but if it still must speculate, plausibility is lacking. *Id.*

Almblad's false or deceptive advertising claim alleges violations of section 43(a)(1) of the Lanham Act, which provides in applicable part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which
>
> \* \* \*
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

A claim brought under this section "must show that the defendant made a material false statement of fact in a commercial advertisement and that the false statement deceived or had the tendency to deceive a substantial segment of its audience." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir. 2007) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999)). However, even if these showings are made, Almblad must still show he "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from [Almblad] to [Scotsman] or by a loss of goodwill associated with [Almblad's] products." *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578, 581 (7th Cir. 2001) (citation omitted).

5

Scotsman also challenges the Court's subject matter jurisdiction on the basis of a plaintiff's lack of standing pursuant to Rule 12(b)(1). *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). In order to establish standing, it must be shown that the plaintiff has sustained an "injury in fact" that is: (1) "concrete and particularized . . . and actual or imminent," (2) causally linked to the conduct of the defendant, and (3) "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted).

Similarly to Rule 12(b)(6) motions to dismiss, when a party moves based on lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the district court must accept all well-pleaded facts within the complaint as true, but may also consider evidence outside of the pleadings to ensure jurisdiction is proper. *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (citing *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)). To this end, Scotsman submits evidence that Almblad created a company known as Origin Tech LLC with the purpose and practice of promoting Almblad's device. (Mem. In Support of Mot. at 10.) Almblad attended the NSF teleconference on behalf of "Origin Tech Center." (*Id*.)

Although a plaintiff may plead these conditions sufficiently to demonstrate standing on the face of the complaint, the defendant may assert a factual challenge, allowing the court to consider evidence "beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." *Apex*, 572 F.3d at 444 (citing *Evers*, 536 F.3d at 656-57). Should a defendant proffer such evidence,

6

the plaintiff can no longer rely on the facial sufficiency of the complaint, but instead must submit "competent proof that standing exists." *Id.*

## ANALYSIS

*Almblad's Statement of a Claim Under the Lanham Act Pursuant to Rule 12(b)(6)*

As mentioned above, the Lanham Act claim in the SAC alleges in relevant part that "Scotsman . . . on and after February 28, 2012, made false or misleading representations of fact and in commercial promotion of its goods misrepresented the nature, characteristics and qualities of its goods and those of Robert Almblad **as exemplified** by the false assertions of Scotsman Industries, Inc. recited in paragraph 9 of cou[n]t 1. . ." (SAC, Count II ¶ 10 (emphasis added).) Paragraph 9 of Count I alleges that on February 28, 2012, Scotsman "composed a written defamatory statement for dissemination to the public . . ." Therefore, as pled, Almblad's claim is limited to only the statement written on February 28, 2012, and verbally disseminated later that same day, under those alleged particular circumstances. Almblad's attempt to imply that other similar actionable statements were made "as exemplified" by the February 28, 2012 statements, but made subsequently, fails. Fraud allegations require a "particularity" that other pleadings do not. Fed. R. Civ. Pro. 9(b). To well plead allegations under the heightened scrutiny of Rule 9(b), a party must lay out "the who, what, when, where, and how: the first paragraph of any newspaper story." *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Almblad's allegations must plead with the required particularity each of these factors under Rule 9(b), if instances other than the February 28, 2012 statements are the claimed basis of a violation of the Lanham Act's provisions regarding commercial

7

advertising or promotion. Therefore, the Lanham Act claim must be measured by Rule 12(b)(6) requirements only in the context of the February 28, 2012 statements.

The Lanham Act's prohibition on false advertising is properly "limited to misrepresentations in commercial advertising or promotion." *Neuros Co., Ltd. v. KTurbo, Inc.,* 698 F.3d 514, 521 (7th Cir. 2012) (internal quotation and citation omitted). The boundaries of what constitutes commercial advertising or promotion are not clearly defined. However, some determination of these parameters can be drawn from those cases which have considered this issue. These cases suggest that the medium used to communicate the misrepresentation is not as important as the nature of the content and to whom it was directed. *Neuros*, 698 F.3d at 522. "The required level of dissemination to the relevant purchasing public 'will vary according to the specifics of the industry.'" *LidoChem, Inc. v. Stoller Enters., Inc.*, 500 F.App'x 373, 379 (6th Cir. 2012) (quoting *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1385 (5th Cir. 1996)). *Compare CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011) (defendant's transmission of over 500,000 unsolicited faxes held to be commercial promotion), *with ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (defendant's letters to its business partners, warning of patent infringement potential of dealing with a competitor held not commercial promotion).

Promotion is "a systematic communicative endeavor to persuade possible customers to buy the seller's product . . . ." *Neuros*, 698 F.3d at 522. Almblad alleges that all of the ice machine manufacturers, as well as the facilitator from the convenience store, were potential consumers of either his sanitation device or the sanitation products of Scotsman. However, the mere allegation of potential customers is insufficient. *See,*

*e.g., Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 624 (7th Cir. 2005) (holding person-to-person sales speech not promotion even to intended customers).

Applying the relevant, albeit limited, Lanham Act case law to the narrow representations by Scotsman during and in the context of the NSF meeting of February 28, 2012, does not disclose any of the operative specific characteristics of commercial advertising or promotion associated with the Act. *See, e.g., First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001) ("Advertising is a form of promotion to anonymous recipients, as distinguished from face-to-face communication."); *Neuros*, 698 F.3d at 522 ("Road shows are a common method of promotion. . . ."). Nor do Almblad's allegations in this regard reasonably suggest that Scotsman's participation in the NSF meeting was advertising or promotional. Therefore, Almblad has failed to state a claim, plausible on its face, of false advertising upon which relief can be granted based on the representations of Scotsman during the February 28, 2012 teleconference. The Lanham Act claim based on these allegations is therefore dismissed with prejudice.[5]

However, as discussed above, the SAC implies that the February 28, 2012 meeting only "exemplifies" other actionable promotional conduct by Scotsman. With respect to any other such conduct, Almblad may file an amended complaint with the specificity required by Rule 9(b) and in conformity with the requirements of Rule 11 within 30 days of the entry of this order.

---

[5] "[I]t is well settled that a district court may refuse leave to amend where amendment would be futile." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) (citing *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)).

*Almblad's Standing Under the Lanham Act Pursuant to Rule 12(b)(1)*

Scotsman asserts that Almblad lacks standing based on his false advertising claim because he has not pled a "competitive injury." (See Reply Mem. at 2.) Scotsman's argument in this regard can be summarized as (1) Almblad formed an LLC known as Origin Tech for the purpose of promoting his device, (2) Origin Tech did, in fact attempt to promote the device, at least to the extent that Origin Tech maintained a website, and (3) that Almblad appeared at the NSF teleconference on behalf of Origin Tech. (*Id*. at 3.)

Further, Scotsman also challenges Almblad's standing factually, requiring Almblad to demonstrate standing beyond the basic allegations of his SAC. (*Id*.) Specifically, Scotsman claims that Almblad did not directly compete with Scotsman. The burden, therefore, rests on Almblad to show that he was in "direct competition" with Scotsman. *Emerging Material Techs., Inc. v. Rubicon Tech, Inc.*, No. 09 C 3903, 2009 WL 5064349, at *3 (N.D. Ill. Dec. 14, 2009). Scotsman submits factual materials that the entity Origin Tech LLC, not Almblad, acted to promote and sell Almblad's invention.[6]

Almblad responds with two affidavits. The first states in part that Almblad's device was among a selection of ice machine sanitation devices in competition for the business of Subway restaurants. (Resp. Br., Ex. A at 2.) Almblad also states that he was invited to an "ice summit" organized by Subway to discuss ice machine sanitation; Almblad "considered the [companies] there to be my competitors and they considered me

---

[6] Scotsman points to the filed records of the Florida Secretary of State's office showing the existence of Origin Tech LLC; a website operated by Origin Tech LLC that promotes Almblad's invention; and a Florida civil action in which Origin Tech LLC was ordered to produce documents and Almblad was held by the court to be without individual standing. (Mem. In Support of Mot. at 10-11.)

10

to be theirs." (*Id.*) In the second affidavit, Almblad asserts that he is the sole owner of the patent of his device, that it has never been licensed to any person or organization, including Origin Tech, and false statements about the device would result in a loss to him personally. (*Id.*, Ex. C.)

In light of the evidence submitted by Scotsman, it may well be true that Origin Tech could also establish standing of injury through direct competition. However, Origin Tech's potential standing does not preclude Almblad's standing individually. *Apex*, cited by Scotsman in support of its argument, is distinguishable on this point because the plaintiff in that case had assigned the rights under which it was claiming injury and apparently never reacquired those rights. *Apex*, 572 F.3d at 444. Almblad does assert and factually support his individual right to sell, lease, or otherwise offer his device to prospective end users, making him a direct competitor of Scotsman.

Scotsman does not factually rebut Almblad's allegation that he suffered great monetary loss. (SAC, Ct. II ¶ 11.) Accordingly, Scotsman's Motion to Dismiss pursuant to Rule 12(b)(1) is denied.

**CONCLUSION**

As set forth above, Scotsman's Motion to Dismiss [46] is granted; and Count II of Almblad's Second Amend Complaint is dismissed with prejudice as to the allegations regarding February 28, 2012, and otherwise without prejudice as discussed above, with leave to refile an amended complaint in compliance with the above stated provisions within 30 days of the entry of this order.

Date: __3/26/14_____   _____
JOHN W. DARRAH
United States District Court Judge