# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT ALMBLAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:13-cv-01297 |
| v. ) | |
| ) | Hon. John W. Darrah |
| SCOTSMAN INDUSTRIES, INC., and ) | |
| KEVIN FINK, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' RESPONSES TO
## ALMBLAD'S FIRST SET OF INTERROGATORIES

Defendants Scotsman Industries, Inc. and Kevin Fink (collectively "Defendants"), by and through their attorneys, hereby object and respond to Plaintiff Robert Almblad's ("Almblad") First Set of Interrogatories (the "Interrogatories") dated March 20, 2014 as follows:

## GENERAL OBJECTIONS

Each of these General Objections is incorporated by reference in each of the specific objections and responses below as if fully set forth therein:

1. Defendants object to the Interrogatories to the extent they purport to require production of information or the identification or description of documents that are subject to any privilege, privacy right, immunity, or obligation of confidentiality, including, without limitation, the attorney-client privilege, the attorney work product doctrine, the consulting expert privilege, and the common interest privilege. Defendants further object to the extent the Interrogatories seek information prepared in anticipation of litigation that contains mental impressions, conclusions, opinions, or legal theories of any attorney or other legal representative of

Defendants and thus is not discoverable. Defendants also object to the extent the Interrogatories seek trial preparation materials the substance of which is not substantially necessary to the preparation of Almblad's case. Defendants object to the extent the information sought may be obtained elsewhere by Almblad without undue hardship. Specific objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a specific objection should not be interpreted as evidence Defendants do not object to an Interrogatory on the basis of an applicable privilege. By responding to these Interrogatories, Defendants do not waive their right to assert any and all privileges at any time.

2. Defendants object to each Interrogatory to the extent that it is vague or ambiguous, overly broad, unduly burdensome, duplicative or repetitious, or calls for information that is not within Defendants' possession, custody, or control.

3. Defendants object to the Interrogatories to the extent that they are not designed to lead to the discovery of admissible evidence or seek confidential information that is not relevant to the claims and defenses alleged in this action.

4. Defendants object to the Interrogatories to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence and/or purport to require the production of information or the identification or production of documents that are not relevant to the claims or defenses in this case.

5. Defendants object to the Interrogatories to the extent that they contain numerous discrete subparts which count as separate interrogatories for the purposes of Federal Rule of Civil Procedure 33(a)(1).

6. The production of any documents or provision of access to any documents to Almblad as an alternative to responding to these Interrogatories does not constitute an admission

by Defendants regarding the authenticity, relevance, or admissibility in evidence of such documents. Defendants reserve the right to object to the introduction or use of such documents in this or any other proceeding.

7. These responses are based on current knowledge and further investigation may reveal additional facts or information that could lead to the supplementation or modification of these responses. Defendants expressly reserve the right to supplement, amend, correct, clarify, or modify the responses as further information becomes available.

## SPECIFIC INTERROGATORIES AND OBJECTIONS

1. Regarding the "Opening Remarks" by Kevin Fink at the NSF meeting of February 28, 2012:

    a. What tests, if any, refuted what claims of Robert Almblad, providing details as to the nature of said test and test results, producing copies pursuant to Rule 34 of any such test data.

**RESPONSE:**

In addition to their General Objections, Defendants object to this Interrogatory on the ground that the terms "tests" and "claims" are vague and ambiguous as used in this context. Defendants will interpret the term "tests" to mean the "engineering testing [that] was conducted" by Scotsman Industries on or before February 28, 2012 as set forth in ¶ 9 of Almblad's Second Amended Complaint. Defendants will interpret the term "claims" to refer to Almblad's assertion that "ice made from commercial machines of the defendant Scotsman Industries, Inc. and other manufacturers was contaminated at the time of use because the design of such machines allowed for the intake of sewer gas during the manufacturing process of ice," as set forth in ¶ 6 of Almblad's Second Amended Complaint. To the extent that Almblad intends this Interrogatory to refer to other "tests" or "claims," Defendants object on the grounds that it is overly broad, unduly

3

burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Defendants further respond that Scotsman Industries Inc.'s operating subsidiaries, Scotsman Group LLC ("Scotsman Ice Systems") and Mile High Equipment LLC ("Ice-O-Matic"), conducted two sets of testing that refuted Almblad's claims. The first set of testing was performed by Scotsman Ice Systems on or about January 6, 2012 in its Vernon Hills, Illinois facility. The testing was conducted by Jose Botello at the direction and supervision of Matt Allison. The testing of each ice machine showed no airflow through the drain line. Defendants have previously produced the results from this set of testing as S0000001-S0000002. This testing refuted Almblad's claim that Scotsman's ice machines drew in sewer gas which contaminated ice during the ice manufacturing process.

The second set of testing was performed by Ice-O-Matic on or about January 10, 2012 in its Denver, Colorado facility. The testing was conducted by Rich Rochleau at the direction and supervision of Mike Maertens and Robert Weber. The testing of each ice machine showed no airflow through the drain line. Defendants have previously produced the results from this set of testing as S0000003-S0000007. This testing refuted Almblad's claim that Scotsman's ice machines drew in sewer gas which contaminated ice during the ice manufacturing process.

    b. What tests, if any, establish that none of the Scotsman machines suck gases from floor drains into the equipment.

**RESPONSE:**

In addition to their General Objections, Defendants object to this Interrogatory on the ground that the term "tests" is vague and ambiguous as used in this context. Defendants will interpret the term "tests" to refer to the "engineering testing [that] was conducted" by Scotsman Industries on or before February 28, 2012 as set forth in ¶ 9 of Almblad's Second Amended

Complaint. To the extent that Almblad intends this Interrogatory to refer to other "tests" or "claims," Defendants object on the grounds that it is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object that this Interrogatory is duplicative of Interrogatory 1.a.

Defendants further respond that the testing described in their Response to Interrogatory 1.a, above, establishes that none of the Scotsman machines suck gases from floor drains into the equipment.

   c. What tests, if any, of nugget ice machines were conducted that establish that no air was blown or pushed through the food zone by the condenser fan on any of them.

**RESPONSE:**

In addition to their General Objections, Defendants object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence related to Almblad's defamation claim as pled in his Second Amended Complaint.

   d. What tests, if any, determined no air borne particles contaminated Scotsman Ice Machines. (This interrogatory is to be answered regardless of whether there was any evidence such contamination caused illness).

**RESPONSE:**

In addition to their General Objections, Defendants object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence related to Almblad's defamation claim as pled in his Second Amended Complaint.

   e. What tests, if any, were conducted that establish that the dust-proof barriers to protect the food zone from dust that is accumulated and blown about by the condenser fan in fact do prevent dust in the condenser from being accumulated and blown about by the condenser fan.

5

**RESPONSE:**

In addition to their General Objections, Defendants object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence related to Almblad's defamation claim as pled in his Second Amended Complaint. Mr. Fink's statement that "Mr. Almblad misinterprets the FDA Food Code to suit his commercial purposes. . . . Our machines do have dustproof barriers within the meaning of the FDA Food Code" was an interpretation of the FDA Food Code, and could not reasonably be understood to be a statement of fact. The FDA Food Code does not contain any quantitative measurements for "dustproof barriers." As is plain from the statement itself, the statement is an interpretation of the reasonable meaning of the term "dustproof barrier" under (*i.e.*, "within the meaning of") the FDA Food Code. That interpretation was based on a review of the Food Code and relevant incorporated provisions.

    f.  What tests comprise the "extensive testing of our machines" referred to by Kevin Fink, providing data on all such tests pursuant to Rule 34

**RESPONSE:**

In addition to their General Objections, Defendants object to this Interrogatory on the ground that the term "tests" is vague and ambiguous as used in this context. Defendants will interpret the term "tests" to refer to the "engineering testing [that] was conducted" by Scotsman Industries or its subsidiaries on or before February 28, 2012 as set forth in ¶ 9 of Almblad's Second Amended Complaint. To the extent that Almblad intends this Interrogatory to refer to other "tests" or "claims," Defendants object on the grounds that it is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object that this Interrogatory is duplicative of Interrogatory 1.a.

Defendants further respond that the testing described in Defendants' Response to Interrogatory 1.a, above, comprise the testing of Scotsman's machines referred to by Kevin Fink that relates directly to Almblad's claim that the ice in Scotsman's ice machines is contaminated by sewer gas.

2. As to each test identified in answer to the last preceding interrogatory provide the following:

    a. When each test was conducted;

    b. Where each test was conducted;

    c. By whom each test was conducted;

    d. The specific model Scotsman machine that was tested.

    e. Whether written data in any form was compiled as to each such test, providing such data pursuant to Rule 34.

**RESPONSE:**

In addition to their General Objections, Defendants object to this Interrogatory on the ground that the term "tests" is vague and ambiguous as used in this context. Defendants will interpret the term "tests" to refer to the "engineering testing [that] was conducted" by Scotsman Industries or its subsidiaries on or before February 28, 2012 as set forth in ¶ 9 of Almblad's Second Amended Complaint. To the extent that Almblad intends this Interrogatory to refer to other "tests" or "claims," Defendants object on the grounds that it is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object that this Interrogatory is duplicative of Interrogatory 1.a.

Defendants further answer that the first set of testing it identified in response to Interrogatory 1.a:

    (a) was performed on or about January 6, 2012;

    (b) at Scotsman Ice System's Vernon Hills, Illinois facility;

7

(c) by Jose Botello at the direction and supervision of Matt Allison;

(d) of models C1030SA, C0830SA, C0530MA, C0330SA, and C0522SA;

(e) and Defendants have previously produced the results from this set of testing as S0000001-S0000002.

The Second set of testing that Defendants identified in response to Interrogatory 1.a:

(a) was performed on or about January 10, 2012;

(b) at Ice-O-Matic's Denver, Colorado facility;

(c) by Rich Rochleau at the direction and supervision of Mike Maertens and Robert Weber;

(d) of models ICE0250A, ICE0400A, ICE0500A, ICE0606A, ICE0806A, ICE1006A, GEM0450A, GEM0650A, and GEM0956A;

(e) and Defendants have previously produced the results from this set of testing as S0000003-S0000007.

3. Has Scotsman conducted any tests that fail to refute the claims of Robert Almblad and, instead, support such claims and if "yes" provide the following as to each such test:

    a. The nature of the test;

    b. The identity of the tester;

    c. When such tests were conducted;

    d. Whether written data in any form was compiled as to any such test.

**RESPONSE:**

In addition to their General Objections, Defendants object to this Interrogatory on the ground that the terms "tests" and "claims" are vague and ambiguous as used in this context. Defendants will interpret the term "tests" to refer to the "engineering testing [that] was conducted" by Scotsman Industries or its subsidiaries on or before February 28, 2012 as set forth in ¶ 9 of Almblad's Second Amended Complaint. Defendants will interpret the term "claims" to mean Almblad's assertion that "ice made from commercial machines of the defendant Scotsman Industries, Inc. and other manufacturers was contaminated at the time of use because the design of such machines allowed for the intake of sewer gas during the manufacturing process of ice,"

8

as set forth in ¶ 6 of Almblad's Second Amended Complaint. To the extent that Almblad intends this Interrogatory to refer to other "tests" or "claims," Defendants object on the grounds that it is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Defendants further respond that, as so defined, neither Scotsman Industries nor its subsidiaries has conducted any tests that fail to refute the claims of Robert Almblad or that support such claims.

4. Has Scotsman conducted any tests on any of their ice machines that show air external to the machine being sucked into the food zone* of any ice machine, and if "yes" provide the information required by Interrogatory 2.

* Definition: Food zones are the zones or compartments where ice is made and where ice is stored or dispensed.

**RESPONSE:**

In addition to their General Objections, Defendants object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to tests other than those described in ¶ 9 of Count I of Almblad's Second Amended Complaint, which alleges that on February 28, 2012 Scotsman "falsely asserted that engineering testing was conducted and it was determined that [Scotsman's] ice machines did not draw in sewer gas from drains." Neither Scotsman nor its subsidiaries has conducted any tests that show sewer gas from drains being drawn into the food zone.

Dated: April 24, 2014

Respectfully submitted,

/s/ Douglas G. Snodgrass
Charles H.R. Peters
Matthew B. Mock
Douglas G. Snodgrass
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
Phone: (312) 258-5500
Fax: (312) 258-5600

*Counsel for Defendants Scotsman Industries, Inc. and Kevin Fink*

## CERTIFICATE OF SERVICE

I, Douglas G. Snodgrass, an attorney, hereby certify that on this, the 24th day of April, 2014, I served the foregoing document by U.S. mail and e-mail on the following:

>Nicholas J. Motherway
>Motherway & Napleton, LLP
>140 S. Dearborn St., Suite 1500
>Chicago, IL 60603
>Phone (312) 726-2699
>nmotherway@mnlawoffice.com

/s/ Douglas G. Snodgrass